Price, J.
This case presents a controversy over the position of superintendent of the infirmary of Richland county. Palmer, the plaintiff in error, had held that position for several years by virtue of elections so-called, at different times by the board of infirmary directors. His last election occurred on the second day of March, 1903, for a term of two years to commence on the 1st day *219 of April, 1903, and to end on the 1st day of April, 1905. He was not re-elected. On the contrary, on the 9th day of February, 1905, the hoard of directors elected O. J. Zeigler, defendant in error, as superintendent for the term of one year to commence on the 1st day of April, 1905. He accepted, gave bond and took the oath of office and was in all respects duly qualified to take possession the day his term commenced. He repaired to the infirmary and demanded possession, but Palmer declined to yield and had with him several men to aid him in resisting Zeigler’s efforts to enter the infirmary residence and the superintendent’s office therein. • On the 3d 'of April the board of directors was in regular session at the infirmary, and they with Zeigler sought to enter the office, when Palmer and his five or six abettors interposed and kept Zeigler out, but the directors formally put him in possession of the premises, and he, on the next day, procured an injunction against Palmer, restraining him from in any way interfering with or obstructing Zeigler in the discharge of his duties. The record shows that Palmer violated the order of injunction and was fined $100 for contempt of court. He was defeated in each of the lower courts, but still persists in the claim that he is the superintendent of that infirmary.
But it is said in his behalf, that if his term did expire on April 1, 1905, he was still claiming title to the office, and if his official career was to be terminated, it should be done by proceedings in quo warranto, and not by the very obnoxious instrumentality of an injunction. In elucidation of this proposition, it is asserted that the position *220 of superintendent is a public office, and that an incumbent of the same is a public officer whose title to the office must be tried, if at all, in a proceeding in quo warranto only, and to make this attitude entirely. clear, we are referred to Section 962, Revised Statutes, which defines the duties of a superintendent. It provides that “the directors shall appoint a superintendent, who shall reside in some apartment of the infirmary or other building contiguous thereto, and shall receive such compensation for his services as they determine. He shall perform such duties as they may impose upon him, and be governed in all respects by their rules and regulations, and he shall not be removed by them except for good and sufficient cause. * * * The superintendent shall require all persons received into the infirmary to perform such reasonable and moderate labor as is suited to their age and bodily strength; and the directors shall-sell all products of the infirmary not necessary for the use of the same, and all .moneys arising therefrom shall be paid into the county treasury to be placed to the credit of the poor fund, to be paid out by the board of directors as exigency requires. The superintendent shall receive into the infirmary any person who produces to him such an order or voucher as is required by law, but the directors may confer upon him the authority to discharge inmates of the infirmary; and he shall enter in a book to be prepared for him and kept for that purpose, the following information, so far as it can be ascertained, in reference to every person so received into the infirmary: name”, sex, age, nativity, date of admission, length of resiidence in the state, length of residence in the *221 county, from what township recéived, whether the person so received is insane, idiotic or epileptic, whether diseased, deformed, crippled, blind, or deaf and dumb, the date of discharge from the infirmary and reasons therefor; the date of all deaths and causes of same; the number of births and parentage of all children born in the infirmary; * * * and the superintendent shall require itemized bills for all labor performed under his direction, or articles purchased by him and provided for the use of the infirmary or the farm connected therewith, and he shall certify over his official signature, on the back thereof, to the correctness of the same, and that such labor was performed or articles delivered for the uses aforesaid.”
The next section provides for- a reserve fund to be set aside by the directors out of the poor-fund, not to exceed two hundred dollars at any time, at the request of the superintendent, to be expended by him on their order for current supplies and expenses, and a strict account of this fund shall be kept by the superintendent, and all expenditures thereof shall be audited by the board.
Section 964 provides for the duties of the directors on ascertaining the yearly amount necessary for the support of the infirmary, including all needful repairs, and when so ascertained the directors shall certify the same to the county auditor, who shall place the same on the tax duplicate of the county, and the infirmary directors shall have full control of said poor fund and shall be held responsible for the same.
Does it appear in the above legislation that the superintendent of a county infirmary is a public *222 officer within the meaning of section 6760, Revised Statutes? No author has been entirely successful in defining the elements necessary to constitute a public office, and the decided cases seem to be no more explicit.
Several cases have been decided by this court, and in none of them is found a general rule applicable in all cases, to determine whether a certain place or position is or is not a public office. The fact that the statute requires an infirmary superintendent to take oath and give bond, does not determine his to be a public office. Neither is the emolument or compensation provided, an essential •.characteristic of such office. So decided in State, ex rel., v. Kennon et al., 7 Ohio St., 547-557-8. Perhaps the best statement of the standard is found in The State, ex rel., v. Jennings et al., 57 Ohio St., 415, where it is said on page 424; “that the most general distinction of a public office is, •that it embraces the performance by the incumbent of a public function delegated to him as a part of the sovereignty of the state.” And in the second section of the syllabus, it is said that “to constitute a pttblic office against the incumbent of which quo warranto will lie, it is essential that certain independent public duties, a part of the sovereignty of the state, should be appointed to it by law, to be exercised by the incumbent in virtue of his election or appoiiitment to the office thus created and defined, and not as a mere employe, subject to the direction and control of some one else.” In the course of the opinion, by Minshall, J., he quotes from section 4 of Meachem’s Offices and Officers, the statement that, “the most important characteristic which distinguishes an office from an employ *223 ment or contract, is that the creation and conferring of an office involves a delegation to the individual of some of the sovereign functions of government, to'be exercised by him for the benefit of the public; that some portion of the sovereignty of the country, either legislative, executive or judicial, attaches for the time being, to be exercised for the public benefit. Unless the powers conferred are of this nature-, the individual is not a public officer.”
This standard has been approved in many cases and in it this court seems to have concurred. See State, ex rel., v. Mason, 61 Ohio St., 62; State, ex rel., v. Halliday, Auditor, 61 Ohio St., 171. In the latter case it was held that the position of a “county warden” created by former Section 409, Revised Statutes, was a county office and could not be constitutionally filled by appointment. In the opinion the court found that the statute gave such officers police powers — power to appoint assistants to assist in policing certain reservoirs of the state and territory pertaining thereto in their respective counties, and to arrest all violators of the laws for the protection of fish and game. On account of such powers, it was held that such wardens were county officers clothed with a part of the sovereignty of the state, and approved of the test adopte'd in State, ex rel., v. Jennings, supra.
What attribute of sovereignty of the state passes to the superintendent of a county infirmary by virtue of Section 962, supra? He is not elected by the people of the township or county, but is appointed by the board of directors; in this case for a specified term, for a compensation which *224 they determine. He is to reside in some apartment of the infirmary or building contiguous thereto, and shall perform such duties as the directors may impose, and shall be governed in all respects by their rules and regulations, and. shall not be removed except for good and sufficient cause. Besides conforming' to such rules and regulations, the statute requires that in a book furnished him by the directors for the purpose, he shall make certain entries of information concerning the persons who are admitted to the infirmary and who are born or die therein, or are discharged therefrom. But the products of the infirmary are not at his disposal, for the directors may sell all such products not necessary for- the use of the same. He is not required to make report to any one of the information which he enters in the book, as required by said statute, but such entries are made for the information of the board of directors, who are, by Section 967, Revised Statutes, to file a report with the county commissioners, which report shall contain the statistical information specified in Section 962, supra, to be entered by the superintendent in the book referred to. He is to require itemized bills for all labor performed under his direction, or articles purchased by him for the use of the infirmary or the farm connected therewith. These are such duties as any prudent farmer may adopt and perform in the prosecution of his business, and the precautions are required so that the board of directors may be informed as to the condition of the infirmary and its financial affairs.
So it will be' seen that he is a mere employe or contractor under oath and bond, limited on all *225 sides in his authority and not authorized by law to contract for the supplies for the infirmary except in a limited degree. He is generally, and perhaps, necessarily, a farmer, supposed to have the experience and ability to superintend it and. the buildings used by the inmates. He should have some knowledge of keeping and certifying to accounts for labor and supplies, and qualification to enter upon the book the statistical information required by Section 962. To this extent he is a bookkeeper as well as a farmer. He should be humane and economical. Is it possible that any of the sovereignty of the state or of either of its great departments filters through the meshes of this statute into the superintendency of the infirmary so as to make it a public office? Has he any police power, or any other characteristic of the sovereignty of the state, or of any department of its government? We think not. It is his duty to aid in administering public charity, but he does it under directions of the board, and he has no independent function in that respect. His duties, •are clerical and supervisory.
The State, ex rel., v. Taylor, 12 Ohio St., 130, is confidently cited for plaintiff in error as holding that a superintendent of an infirmary is a public officer. Taylor was one of the board of infirmary directors of Butler county. By his own vote and that of another member he was appointed superintendent, and they fixed his salary, etc. The prosecuting attorney filed an 'information in the nature of quo warranto to remove Taylor as superintendent. The issue was as to the legality of Taylor’s appointment. The district court held the appointment valid, and *226 the case was brought to this court on error. The syllabus adopted by the court is: “Where a member of the board of directors of a county infirmary was, b}r said board, appointed to the office of superintendent of the county infirmary, he still continuing to hold the office of director — Held: That the duties of the two offices are incompatible, and can not be legally held by the same person at the same time; and such appointment was,- therefore, illegal and void.” It is true that counsel for relator in his brief in that case discussed to a limited degree the official character of the office of superintendent, and urged that he was a public officer in contemplation of law; but he also urged as the principal ground for the relief prayed for, that the two offices were inconsistent, inasmuch as he, as a member of the board, would be required to examine and pass upon his own conduct as superintendent of the infirmary. The report of the case contains no brief for the defendant in error, and from' the character of the syllabus, it seems that it did not become necessary for the court to decide whether the superintendent of the infirmary was a public officer, for the court held that the two positions were incompatible. The statute now forbids the thing thus condemned by the court. Brinkerhoff, J., in announcing the very brief opinion of the court said:, “Concurring with counsel for the relator in their view of the law of. the case the judgment,of the district court will be reversed at the defendant’s costs; but, as it is understood that he has ceased to exercise the office of superintendent of the county infirmary under the appointment contested in the case below, there will be no judgment of ouster.”
*227 Under the above circumstances we can not say that the court decided the question we are now considering, for the law of the case must be found in the syllabus. Such was the rule adopted by this court at the January term for 1858, found in the front pages of volume 5 of the Ohio State Reports, and it has remained the rule to the present time. ' It requires that: “A syllabus of the points decided by the court in each case (cause) shall be stated, in writing, by the judge assigned to deliver (prepare) the opinion of the court, which shall be confined to the'points of law arising from the facts of the case that have been determined by the court. And the syllabus shall be submitted to the judges concurring therein for revisa! before publication thereof; and it shall be inserted in the book of reports without alteration, unless by the consent of the judges concurring therein.”” It will be seen that under this rule, and looking to the syllabus of the case last referred to, the point was not decided by the court, as to whether the superintendent of an infirmary is a public officer.
His position does not come up to the standard above given in State, ex rel., v. Jennings, supra, and in our judgment he is not a public officer.
However, if he was a public officer, he was such only during the term for which he was appointed, which ended on the 1st day of April, 1905. On that day Zeigler was entitled to take possession and Palmer no longer had title or color of title to the position. He became a trespasser when hé refused to yield possession and retire: He was not removed from office, but his term had expired, and therefore no reasons were to be assigned, as in case of removal. Having no color *228 of title to the superintendency, there was no question of title to try, and a proceeding in quo zvarranto was not 'necessary to oust him from that position. This view is in accord with what was said in State, ex rel., v. Craig, 69 Ohio St., 236. The old-fashioned remedy for forcible detention might have been brought to bear on Palmer, but it might have been slow and otherwise inadequate.
When we recur to the facts found by the circuit court it is seen that the board of directors put Zeigler in actual possession of the infirmary premises and ordered Palmer- to leave. But he had formed an attachment for the old place and decided to stay. As early as February preceding, they .had notified him in writing to be ready to turn over the infirmary to Zeigler on the. 1st day of April, and on the day the injunction under review was granted he was the superintendent and the only one lawfully in possession. Therefore injunction was the proper remedy to protect his possession against the interference and obstruction of others, as ruled in Reemelin v. Mosby, 47 Ohio St., 570; Harding v. Eichinger, 57 Ohio St., 371. In the latter case the court said: “Injunction may be resorted to ’ by the incumbent of a public office to protect his possession against interference by an adverse claimant until the latter establishes his title, but is not the appropriate remedy to try the title.”
Hence it is, that if the superintendency of a county infirmary is a public office and the incumbent a public officer (which we do not believe), still, under the findings of the lower court that Zeigler had been duly installed into office and put in possession by the lawful authorities, he could *229 resort to injunction as a remedy to protect his possession against the high-handed and violent interference of Palmer and his abettors. We have here another instance of the unquenchable thirst for official position, no matter how obscure, tyhich sometimes takes possession of the sons of men.

Judgment affirmed.

Shauck, C. J., Crew, Spear and Davis, JJ., concur.